Cheuvete v. Mason.

Cheuvete *et al. v.* Mason.

The separate answers of several defendants being under oath, and denying all the material allegations of the bill, are sufficient to defeat the bill in the absence of any reliable proof to the contrary.

Fraud will not be presumed ; it must be proved.

Where it appeared that the contract for a working interest in a "lead" was in the wife's separate name, paid for with her own money, and all proceeds received and arrangement conducted in her own name and right; held, that the circumstances establish her separate ownership of the "lead," and that parties having full knowledge of all the circumstances, could not hold said working interest or the proceeds thereof to satisfy a debt against the husband.

The right of a married woman to acquire, possess and control property in her own right and for her own benefit, and that it cannot be taken to pay the husband's debts unless left under his control without notice of the real ownership, are fully recognized by the Code.

Although the defendant answered to the bill, still if a demurrer would hold against it, a court will not, in general grant the relief sought.

## Appeal from Dubuque District Court.

*Opinion by* WILLIAMS, C. J. Lewis J. Mason filed his bill, against defendants, in chancery, to the October term of the district court of Dubuque county, 1853. The bill sets forth that at the spring term of the district court of Clayton county, in this state, complainant had obtained judgment against Baptiste Cheuvete, for the sum of two hundred and ninety-eight dollars and twenty-five cents, with costs of suit ; and that before the commencement of this suit, he obtained two other judgments against the said defendants, before one Vincent Reynolds, a justice of the peace of the county of Clayton, amounting in all to about fifty-five dollars, all of which remains due ; that the said Baptiste, Margaret, his wife, John Connelly, Narcessa Bouett an d others, have combined and confederated together to cheat and defraud complainant ; that the said Baptiste Cheuvete, about one year since, struck a mineral "lead" near th e-

Cheuvete *v.* Mason.

town of Buena Vista, in Clayton county ; that he has con-
tinued to work the same ever since himself, and in his own
name, raising and selling a large amount of mineral there-
from, to wit : to the amount of more than one hundred
thousand pounds, as his own share ; that he sold it and had
received the proceeds, amounting to about two thousand
five hundred dollars, in his own name, and for his own use
and benefit ; that he had loaned a portion of the money, so
made, about two hundred and fifty dollars, to one John
Connelly, who knowing that said money belonged to said
Baptiste, and not to Margaret, his wife, gave his note there-
for to her, in her own name, as of her own right, with the
concurrent design of the parties to cheat and defraud com-
plainant and others, creditors of the said Baptiste ; that the
sum of seventy-five dollars was, in like manner, loaned to
one Narcessa Bouett, of Dubuque county, being the prop-
erty of said Baptiste, and not of Margaret his wife ; also
that, in like manner, one hundred dollars were loaned to
one Uzeb Bouett of the county of Dubuque.

The bill further charges that said Baptiste Cheuvete, and
Margaret, his wife, had combined and confederated with
one Uell Little, to cheat and defraud complainant, and other
creditors of the said Baptiste ; and for that purpose he, the
said Baptiste, had transferred and made over all his prop-
erty to said Little, consisting of the aforesaid debts and
demands, and also all his other property and effects of
every kind and description ; that said Little had received
the deeds and other instruments of conveyance in writing,
without paying any consideration therefor, with purpose
and design of cheating and defrauding complainant ; that
the property so transferred is worth one thousand dollars.

The petition concludes with the prayer that said Baptiste
Cheuvete, Margaret Cheuvete, his wife, John Connelly,
Narcessa Bouett, Uzeb Bouett and Uell Little may, each
and all, be made defendants in this action, and be compelled
to answer under oath as to the charges contained in the

Cheuvete *v.* Mason.

complaint specifically. The bill is sworn to and attested in due form.

An attachment was issued and served by attaching property, &c., in the hands of garnishees. The parties, by their attorneys, appeared, and, by agreement, released the property, and dismissed the garnishees. It was also agreed that Baptiste Cheuvete was indebted to the plaintiff in the sum of two hundred and ninety-eight dollars and twenty-four cents ; whereupon judgment was rendered against him for that amount and cost.

The defendants appeared and answered separately, under oath, as required.

Margaret Cheuvete, after admitting that she is the wife of Baptiste Cheuvete, and that she and her husband were very poor and had no property, except a few of the indispensable housekeeping utensils, proceeds to state, in her answer, " That after commencing a residence at Buena Vista, she had borrowed money on her own individual credit, to enable her to keep house ; that she kept boarders, took in washing, and exerted herself, in every way she could, to earn money with which to support herself and children ; she denies that Baptiste Cheuvete struck a " lead " near the town of Buena Vista, as alleged in complainant's bill ; but she avers that Daniel Little, Uell Little and Charles Hoffman were, and still are the owners of certain lands near Buena Vista ; that she is informed, and still believes, that they discovered said " lead ; " and that neither the said Baptiste, nor she, had or have, anything to do with " striking " said " lead ;" that after said " lead " was struck by said Daniel and Uell Little and Charles Hoffman, she, together with one James Garrison, rented the ground, on which said " lead " was situated, of the owners, for the purpose of working it ; that she, thus, in her own name and right, acquired a working interest of one-fourth in said " lead ; " that one half of the mineral raised was due to the owners of the " lead ;" and the other fourth was the property

16*

of her co-tennant, and that the working of the "lead," as to her share, was carried on by herself, in her own name and right, and the proceeds of the same was her separate property, with which the said Baptiste had nothing to do; she avers that from first to last she worked said "lead," received the proceeds in money, paid her share of the expense in her own name and right, without the control of her husband; she admits that her husband sometimes worked at the "lead," as he pleased; but denies that he worked or carried on the "lead" in his own name, or had any right or property in it, or the working interest thereof. She admits that she loaned sums of money to the persons named in the petition, and took notes and security in her own name, which money was of the proceeds or profits of the "diggings," and avers that she loaned it as her own money, without any intent to cheat, defraud, or hinder or delay the creditors of her husband; she also avers that said money was loaned prior to the time when said Mason, the complainant, purchased the demands which he claims to be now due from the said Baptiste; and further answering, she avers that she has, in like manner, loaned money to the said Lewis J. Mason, the complainant in this suit; and that he well knew, long before he purchased said claim against said Baptiste, her husband, that said "diggings," and the proceeds received by this defendant therefrom, as well as the money loaned by her to said Mason, complainant, and Narcessa Bouett, and others, named in the bill of complaint, was the sole and separate property of respondent; she then alleges that, if it were true that the property and "lead" were, as alleged, held and controlled as his, by the said Baptiste, so as to cheat and defraud creditors, which she denies, that said Mason, by reason of the last averment here made, is estopped from alleging the said fraud, or from claiming, in any manner, the said property or proceeds of the same, because if any fraud in law, or in fact, had been committed, the said Lewis J. Mason was, and is, himself a party to the same; she further answers, that the said Uell

Little had paid her the full amount of the several notes of Narcessa Bouett, Uzeb Bouett, John Connelly and Lewis J. Mason, amounting in all to about the sum of five hundred and twenty-three dollars; and that she had expended said money in purchasing the working interest of her said partner, James Garrison, and in improving said "diggings," and for necessary expenses of the family; that since her purchase of the entire working interest in said "lead," from said Garrison, she has not realized any profits therefrom; that her share of said "lead" was not ' one hundred thousand pounds' of mineral, but was only seventy-five thousand pounds; that the expense of working the "lead" is very great," &c.

We have here given the substance of the answer of Margaret Cheuvete, entire, as verified by oath, and filed in the case, which supersedes the necessity of setting forth that of the answers of the other defendants. They all answer under oath, denying any combination, or confederation, to cheat and defraud the complainant and other creditors of Baptiste Cheuvette, as alleged in the bill, as far as they were concerned in the matters and things stated in the complaint, and fully sustain the answer of Margaret, as to all the material allegations thereof. The answers of the several defendants deny all the material allegations of the complainant's bill, as to fraud, and set up the separate right of property, and ownership of the working interest, in the lead, in Margaret, the wife of Baptiste Cheuvete, as a full and complete defense to the action. Such are the pleadings of the case.

The evidence of several witnessess is adduced by complainant, showing that Baptiste was engaged and assisted in working the "lead;" that he took some part in making the contract of purchase of the working interest, with the owners of the land, and that when the time arrived, and the parties met to have the writings of contract made, he then informed the parties that the contract must be written as made in the name of Margaret, his wife, and not in his

name; that she, and not he, was the contracting party; also, that he had in conversation, as to his circumstances, stated that he was in debt; that the claims purchased by the complainant, Mason, were unjust, and he was not willing to pay them.

A decree was entered by the district court in favor of the complainant, and against the defendants, "for the sum of three hundred and eighty-nine dollars and fifty-four cents, and cost. And it was further adjudged and decreed that the defendants, Margaret Cheuvete and Uell Little deliver over and surrender up to the district court for the use of the plaintiff, all evidence of indebtedness,' that they or either of them have or hold against John Connelly, Uzeb Bouett and Narcessa Bouett, at the time of the service of notice on them, or either of them, on or before the next term of the said district court; and in default of so doing, that the further judgment of four hundred dollars be entered against them, for the use and benefit of the said plaintiff, against the said Baptiste Cheuvete, and others."                    ⸮

Of the questions which are presented in this case for decision, two only, need be particularly considered.

1. Is the charge of combination and confederation, by the defendant, to cheat and defraud the complainant, and other creditors of Baptiste Cheuvete, as laid in the bill, satisfactorily established?

2. Is the property, money and effects of the mineral "lead," sought to be charged with the indebtedness of Baptiste Cheuvete, the husband, the separate and rightful property of Margaret his wife; and can she hold, use and control the same, as she may choose, free from any liability on account of her husband's debts?

After a thorough examination of the evidence of the case, adduced in support of the plaintiff's bill, we are unable to find proof, sufficient to sustain the charge of fraudulent combination by the defendants. The answer of Margaret Cheuvete, taken together, with the answers of the other defendants, being all under oath, in accordance with the

statute, denies all the material allegations of the plaintiff's bill; and in the absence of evidence by disinterested witnesses furnishing good and substantial ground, in contradiction of the answers, present a sufficient defense to the plaintiff's action. We find nothing in the evidence which might not fully consist with a bona fide separate ownership of the working interest in the "lead," by the wife of Baptiste Cheuvete, and the control of the effects belonging to it, and the profits arising therefrom. The facts that the contract for the working interest thereof was made and written in her name; that she paid for it with her own money, that she received, and in her own and separate right and name loaned the money made from her share of the profits of the mineral raised, *to the plaintiff himself*, prior to the commencement of this action; and also before he purchased the judgment debts, for the collection of which this proceeding was instituted, as well as her loaning money to others, go strongly to establish her separate right to, and ownership of the lead. The public assertion of her true position in the matter; and especially notice thereof to the plaintiff, establish the equity of the case. If the express and positive denial of the fraudulent combination, furnished by the answers of the defendant's had not been made, and the case had been left for decision on the evidence of the plaintiff alone, fraud and combination to cheat, as charged in the bill of the plaintiff would not be clearly made out without the aid of presumption, in violation of the well established rule of law. "Fraud must be proved, not presumed." In the absence of any corroborating proof, the occasional remarks of the husband Baptiste Cheuvete relative to his indebtedness—his presence at the time of the execution of the written contract for working the mine, and the fact that, with others, he worked the "lead" at times, cannot prejudice the rights of the wife. Particularly is this so, when the answers to the bill and the evidence of the case, fully establish the facts that she paid for the interest in the mine out of her separate and individual means, the

avails of her own energy, industry and toil. That the contract was made in her separate name and right ; and that she alone controlled the avails and profits of the minerals by acts of contract in her own name entirely, without being joined by her husband. All these facts were matters of public notoriety in the neighborhood ; of which also the plaintiff had before he became the creditor of the husband, special and personal notice. He had been her debtor for a loan of money, which she had procured as her share of the profits of the "lead," and he had dealt with her, in relation thereto, in her own separate right and name. We find nothing in the evidence when taken with the pleadings of the case, to warrant the conclusion that there was any fraudulent combination, or confederation, on part of the defendants as charged in the plaintiff's bill.

In considering the first question here presented, the fact of separate claim and ownership of the mineral "lead," and the use of the avails thereof, by Margaret the wife, have been necessarily adverted to. It is only necessary in disposing of the second question, to consider the rights of the woman as to separate property and the use thereof, during coverture as secured by the law of this state.

The Code of Iowa, husband and wife, Chapter 84, § 1447, p. 218, provides that " the personal property of the wife does not vest at once in the husband, but if left under his control, it will in favor of third persons acting in good faith and *without knowledge of the real ownership*, be presumed to have been transferred to him except as hereinafter provided."

Sections 1448 and 1449, then proceed to make provision for the preservation of her separate property and effects from liability for the husband's debts where such property is left under his control, by requiring her to file it of record with the recorder of deeds of the county, so as to give notice of her ownership to all persons. This done in case of the husband's death, she becomes a preferred creditor of his estate over all other creditors, except such as gave

credit to the husband, after the property was placed under his control, and before the filing of such notice *unless they had knowledge of her rights.*

By the provisions of our Code the right of a married woman to possess and own property and use and control it for her own benfit, free from the control of the husband, and without liability for his debts in their own and separate capacity, is fully recognized and protected.

In this case the evidence establishes the fact of separate ownership and use of the property by the wife. The knowledge of this fact by the plaintiff, by the transaction of business with the wife, in full recognition of her right is also established; and in the absence of sufficient evidence to sustain the allegation of fraudulent combination, we think the defendants are protected under the provisions of the Code, as far as this plaintiff is concerned.

We have taken this view of the case, and have adjudicated it upon the bill, answers and evidence, without a special consideration of other points raised by the counsel for defendants not deeming it of importance to put the case for adjudication upon them. By doing so, however, we do not pass them as trivial. We consider that the bill of the plaintiff does not show a clear case for equitable jurisdiction. The record does not show that the plaintiff had fully executed his remedy at law, against Baptiste Cheuvete, the debtor. It is true on this point the defendants did not demur in the court below, but "in general if a demurrer would hold to a bill, the court though the defendant answer, will not grant relief upon hearing the cause." Story's Equi. plead., §§ 446, 447.

We also consider that the transcripts of the record of the judgments against Baptiste Cheuvete which are made part of the bill to prove the indebtedness, and the amount thereof, are defective in the authentication, and do not meet the requirements of the Code.

The decree of the court below as entered, is not such as answers to the facts of the case as claimed by the bill, if it

had been good in equity, and had been sustained by the evidence. These last mentioned points, we have not deemed it necessary to consider specially, for the reason that the plaintiff had failed, on the merits of the case at large, to show that he is entitled to the relief in equity which he seeks.

Decree reversed.

*P. Smith* and *J. Burt*, for appellants.

*L. A. Thomas*, for appellee.